UNITED STATES of America,
Plaintiff-Appellee,

v.

Richard CALLAHAN,
Defendant-Appellant.

No. 76–2401.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 4, 1977.

Decided March 28, 1977.

---

* The Honorable Robert L. Taylor, Judge, United States District Court for the Eastern District of Tennessee, sitting by designation.

734

Timothy J. Potts, Summers, Potts, Burke & Hildebrand, Richard Callahan, Robert E. Sweeney, Sweeney, Mahon & Vlad, Cleveland, Ohio, for defendant-appellant.

Frederick M. Coleman, U. S. Atty., Cleveland, Ohio, Richard S. Stolker, Crim. Div.,

Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before LIVELY and ENGEL, Circuit Judges, and FEIKENS,* District Judge.

FEIKENS, District Judge.

This is an appeal from a jury conviction on three counts of an indictment charging violations of the Hobbs Act, 18 U.S.C. §§ 1951, 1952. Appellant is a business agent for Local 17 of the International Association of Bridge, Structural, and Ornamental Ironworkers, located in Lorain County, Ohio. He was charged with having extorted $1510.00 from the K & B Engineering Company, a Texas-based construction contractor which in August of 1975 was constructing a microwave communications tower in Lorain County, Ohio with out-of-state, non-union labor. Appellant challenges two evidentiary rulings made by the District Court during trial which prevented appellant from presenting any evidence regarding contacts between K & B and other union representatives at other job locations.

The government's chief witness at trial was Thomas Kimble, the supervisor for K & B at the Lorain construction site. He testified that on the morning of August 15, 1975, he arrived at the construction site to learn that a union representative had visited the site earlier. Appellant arrived just before noon and identified himself to Kimble as the business agent for Local 17. Appellant complained of K & B's use of non-union labor to construct the tower when 150 of his own men were then out of work. By this time, approximately 15–25 members of appellant's union had gathered at the site. Kimble testified that these men were "real rowdy, talking," that they had earlier surrounded his truck and prevented it from moving, and that one of them, a union steward named James T. "Red" Stafford, had accused Kimble of "stealing work" and had threatened to damage the tower "unless you cooperate with us."

A discussion ensued between Kimble and appellant. Kimble testified that appellant demanded some payment to his men for K & B's use of non-union labor. Kimble testified that he was afraid of possible violence against his employees and of damage to the tower and his equipment unless he acquiesced. After further discussion, it was agreed that Kimble would secure from his home office in Dallas sufficient funds to pay five of appellant's union men for three days work plus fringe benefits. It was understood by Kimble that none of appellant's men would perform any work for these payments.

Kimble and appellant then drove to a nearby tavern where Kimble contacted his Dallas office by telephone and explained the situation to Mr. Ken Burleson, the owner of K & B. Kimble testified that appellant took the telephone receiver at one point and told Burleson to send the money "if you think anything of the health and welfare of your men and equipment." Later that day, K & B forwarded $1500.00 to Kimble, who obtained the money from the Western Union Office in Lorain in the form of five checks each in the amount of $300.00. The checks were made out to five members of appellant's union, whose names and social security numbers Kimble had earlier recorded at appellant's direction. Kimble and appellant then returned to the construction site, where Kimble paid to each of the five pre-designated union men his $300.00 check plus $2.00 in cash. Thereupon, appellant and the union members left, without performing any work.

On the basis of this testimony and other evidence, appellant was convicted of extortionate obstruction of commerce, 18 U.S.C. § 1951, the unlawful use of a telephone with intent to commit an extortionate obstruction of commerce, 18 U.S.C. § 1952, and the unlawful use of a Western Union facility with intent to commit an extortionate obstruction of commerce, 18 U.S.C. § 1952. Appellant was sentenced to pay a

* Honorable John Feikens, United States District Judge for the Eastern District of Michigan, sitting by designation.

fine of $500.00, restitution of $1510.00, and was placed on probation for three years. Appellant was acquitted of a fourth count charging conspiracy to commit an extortionate obstruction of commerce, 18 U.S.C. § 1951.

As his principal defense at trial, appellant sought to establish that the K & B Engineering Company had been involved in similar confrontations with other union representatives at other tower construction sites around the country and had adopted a practice of paying the union or its members a cash amount as a settlement in lieu of hiring local union members. It was appellant's contention that K & B had a strong anti-union bias and insisted on bringing in its own non-union workcrews but that K & B would negotiate with local unions and would routinely pay them off—not out of fear of violence or property damage, but rather as a matter of sound business judgment in order to avoid having to hire through a different local union, with different rules and hiring practices, at each construction site. On this basis, appellant contended that Kimble was not motivated by fear in agreeing to pay the $1510.00 to members of appellant's union and that a required element of the crime of extortion was therefore absent. *United States v. Billingsley,* 474 F.2d 63, 66 (6th Cir. 1973).

Appellant's initial attempt to establish this defense occurred during the cross-examination of Kimble, when appellant's counsel asked:

> Q. Prior to this incident, Mr. Kimble, had you ever been approached by union business agents?

Counsel for the government objected to this question, stating his reasons at the ensuring side-bar conference in these terms:

> MR. GALE: All right. It seems to me that it can't have any relevance to this proceeding.
>
> The witness is a victim. This is similar to a bank robbery trial. You are asking the victim if he has ever been the victim of a bank robbery before.

Counsel for appellant then offered this purpose for the question:

> MR. POTTS: I would make a brief observation.
>
> Mr. Gale is quick to point out, on prior occasions, the state of fear this man was in.
>
> If he has been approached in this situation many times before, I think the jury is entitled to know about this. It would bear upon his mental state.

The District Court thereupon sustained the objection:

> THE COURT: I can visualize the situation, Mr. Potts, where the same or similar circumstances at one time may create apprehension, depending on facts and circumstances, and at a subsequent time they may not.
>
> It is not material. We are concerned with whether or not fear was engendered at this particular time.

■ This ruling was error. Defense counsel's inquiry was an attempt to elicit information on any past confrontations which Kimble may have had with other union representatives in similar circumstances. We believe that such evidence may well have established a routine practice on K & B's part of paying off local unions for the sake of expediency and not out of fear. We further believe that such a routine practice, under Rule 406 of the Federal Rules of Evidence, would have been relevant in proving that the conduct of K & B on this particular occasion was in conformity therewith. Under Rules 401 and 402 of the Federal Rules of Evidence, the question was therefore proper and should have been permitted. Any danger of confusion, harassment, or prejudice to the government would appear to have been minimal. Federal Rule of Evidence 403.

■ The trial court has discretion to limit the scope of cross-examination to those issues raised on direct examination or to issues relating to the witness's credibility and may, in any event, exclude inquiry into purely collateral matters. Federal Rule of Evidence 611(b); *Alford v. United States,* 282 U.S. 687, 694, 51 S.Ct. 218, 75 L.Ed. 624 (1931); *United States v. Mills,* 366 F.2d 512

(6th Cir. 1966). The government argues that the trial court properly exercised its discretion in this case, since defense counsel's inquiry had no impeachment value and no relation to any of the issues raised by Kimble's testimony on direct examination.

We cannot agree. Kimble testified on direct examination that he was motivated by fear in agreeing to obtain the funds demanded by appellant. He testified to explicit threats made to him by appellant and others present during their discussions, and to a number of intimidating actions and circumstances surrounding those discussions which gave him further cause for apprehension. Thus, Kimble testified on direct examination to the number of union men present at the scene, their agitated manner, and the surrounding of his truck at one point, which prevented him from moving. Kimble testified as to the height and weight of one of the union men who threatened him on that date, James "Red" Stafford, and was even allowed to state over objection that Stafford "was the type of guy that I—if we had got in a fight, I would want him on my side." The purpose of all of this testimony was, in the government's own words, to "show through this witness and others that there was a growing state of anxiousness, fear, being afraid."

Having thus elicited testimony on direct examination as to Kimble's mental state at the time of the alleged offense, the government was in no position to object to further inquiry into this issue on cross-examination. Appellant's question to Kimble regarding his past contacts with other union representatives at other job sites was, as we have already stated, a proper attempt to pursue this issue. If Kimble's responses had revealed an anti-union bias or a practice on K & B's part of routinely paying to local unions an amount of cash in lieu of hiring local union labor, such testimony would have impeached Kimble's credibility by undercutting his earlier statements of fear and intimidation. Nor was appellant's inquiry merely an attack on Kimble's general credibility. The issue of Kimble's motivation for paying the money to appellant's local concerned a required element of the charged offense and went to the very heart of appellant's defense at trial. *United States v. Garrett,* 542 F.2d 23, 26 (6th Cir. 1976).

■ We do not question the District Court's power to restrict the scope of cross-examination in the exercise of its sound discretion. *District of Columbia v. Clawans,* 300 U.S. 617, 632, 57 S.Ct. 660, 81 L.Ed. 843 (1937); *United States v. Marchesani,* 457 F.2d 1291, 1297 (6th Cir. 1972). But where, as here, the court's restriction prevented defense counsel from cross-examining the government's chief witness as to his credibility and the veracity of his testimony on a required element of the charged offense, the defendant has been denied his Sixth Amendment right of confrontation. *Smith v. Illinois,* 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968); *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *United States v. Baker,* 494 F.2d 1262 (6th Cir. 1974).

■ The government contends that any evidence of past payments by K & B to other unions at other job sites is irrelevant, since it would not establish a lack of fear on Kimble's part in this case but would only show that K & B is regularly victimized by local labor unions for employing non-union workcrews. This argument, however, is more properly addressed to the jury upon re-trial, for it presents only one of several possible explanations for any past payments of K & B to other unions and therefore goes only to the weight of such evidence and not to its admissibility.

There was no offer of proof in the record to show what appellant's counsel would have elicited from Kimble through his inquiry into K & B's past contacts with other unions. If such an offer of proof had been made, it is quite possible that the District Court would have reversed its earlier ruling and permitted the inquiry.[1] We do not

---

1. Indeed, appellant, as part of his case in chief, later called a Mr. Edward Shingary, a business agent for a different union, to testify to a discussion he had had with Kimble at a different

**738**

condone the perfunctory way in which appellant's counsel stated the purpose of his question and then simply let the matter drop once an adverse ruling had been made. Such treatment of the issue at trial tends to belie appellant's fervent contentions before this court that the past dealings of K & B with other unions constituted the essence of his defense.

■ Nevertheless, we are persuaded to find that appellant's counsel did provide an explanation of the purpose of his question sufficient to preserve the issue. Appellant's counsel did state to the court that he was attempting to determine if Kimble "had been approached in this situation many times before," and that such evidence "would bear upon his mental state." In view of the fact that appellant's counsel was seeking facts peculiarly within the knowledge of the witness he was cross-examining, and in view of the fact that inquiry into this area was cut off at the threshold, we believe that counsel's failure to more adequately apprise the trial court of the testimony he hoped to elicit from Kimble was not fatal to this appeal.

The judgment of the District Court is reversed, and the cause is remanded for a new trial.

job site some five months after the alleged offense. In sustaining an objection to this testimony, the District Court stated that such evidence might have been admissible if brought "within the orbit of something that happened at that particular time [the date of the alleged offense] in the immediate vicinity before that time, but not afterwards."

Appellant challenges this ruling of the District Court as well, arguing that events subsequent to the alleged offense also may establish a pattern or practice on K & B's part of routinely paying off local unions and thus may be probative of Kimble's state of mind on the date in question. *Federal Trade Commission v. Cement Institute,* 333 U.S. 683, 705, 68 S.Ct. 793, 92 L.Ed. 1010 (1948). We do not reach this issue. The admissibility of such evidence is best determined by the District Court upon retrial, if it is again proffered, for the District Court will then be in a position to evaluate its relevance, in light of such factors as Kimble's cross-examination testimony regarding other contacts with other union agents.