STATE OF CONNECTICUT *v.* MICHAEL GAYNOR

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

Argued October 16—decision released December 16, 1980

*Richard T. Meehan, Jr.,* for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, was *John J. Kelly,* state's attorney, for the appellee (state).

COTTER, C. J. The defendant was convicted by a jury of the crime of assault in the first degree in violation of § 53a-59 (a) (1) of the General Statutes,[1] and has appealed from the judgment on the verdict.

---

[1] "[General Statutes] Sec. 53a-59. . . . (a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or (2) with intent to disfigure another

The defendant raises two issues on appeal; whether the court erred: (1) in denying the defendant's motion for judgment of acquittal based upon insufficiency of the evidence and (2) in limiting the defendant's cross-examination of the state's medical witness.

## I

From the evidence presented, the jury could have found the following facts. At approximately twelve midnight on November 2–3, 1978, Michael Gaynor entered Chetti's Place, a bar and restaurant located in Derby, accompanied by an unidentified individual. Gaynor approached Gary Taylor, a patron at the bar, and indicated that he would ". . . like to have a talk." Taylor suggested that they talk in a backroom, but the defendant insisted that the meeting take place outside. Once outside, Taylor displayed a knife and told Gaynor that he would use it "if anything happened." Gaynor told Taylor that nothing would happen and Taylor closed the knife and put it back in his pocket. At this time, the unidentified individual who had arrived with the defendant joined Gaynor and Taylor in the parking lot, standing one foot behind and two feet to the right of the defendant. As the defendant began to punch Taylor, the unidentified individual moved away from the defendant, drew a handgun and fired a shot at Taylor. Taylor grabbed the defendant Gaynor and held Gaynor as a shield between himself and the person firing the shots. Two more shots were fired, hitting Taylor in the left arm and left leg. As

person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person; or (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person."

Taylor turned to go back inside the bar, two bullets struck him in the back. The defendant and the unknown individual ran down the street, got into the same car, and drove off together. Taylor was taken to Griffin Hospital where he underwent surgery and was hospitalized for ten days.

At trial, Taylor admitted that at a meeting with the defendant on September 12, 1978, he (Taylor) had assaulted the defendant with a broken beer bottle and that at the time of the Chetti's Place meeting, Gaynor still bore the scars of the earlier attack. The state presented evidence of an interview with the defendant conducted by Inspector Gerard Nuber of the Derby Police Department. Nuber testified that when Detective Germain asked the defendant why he did not let the police handle the previous assault by Taylor, the defendant responded: ". . . Yes, well, I guess I should have."

## A

" 'When a jury verdict is challenged on the ground that the evidence is insufficient to sustain the verdict, the issue is whether the jury could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt . . . .' Each essential element of the crime charged must be established by such proof . . . and although it is within the province of the jury to draw reasonable, logical inferences from the facts proven, they may not resort to speculation and conjecture." *State* v. *Festo,* 181 Conn. 254, 259, 435 A.2d 38 (1980); *State* v. *Saracino,* 178 Conn. 416, 419, 423 A.2d 102 (1979). It is the cumulative impact of a multitude of facts, and not any one fact,

which establishes guilt in a case involving substantial circumstantial evidence. *State* v. *Brown,* 168 Conn. 610, 616, 362 A.2d 910 (1975).

The defendant contends that the sometimes contradictory testimony of the state's witnesses was insufficient to support the jury verdict of guilty beyond a reasonable doubt as to assault in the first degree. The defendant points to the witnesses' different versions of the melee in the parking lot as well as the state's failure to demonstrate that the defendant actually fired the shots as evidence sufficient to raise reasonable doubt as to his guilt.[2] The short answer to the first argument is that witnesses' memories and perceptions often vary. This variance, due to the excitement of the moment, the differing vantage points of the observers and the mysteries of the associative processes of the human mind, is a normal and common phenomenon. Differing testimony does not, in and of itself, indicate the web of fabrication suggested by the defendant. Whether there seems to be contradiction between different witnesses or confusion in the testimony, it is precisely this type of factual conflict that Anglo-American jurisprudence has traditionally entrusted to the jury. See *State* v. *Reardon,* 172 Conn. 593, 597, 376 A.2d 65 (1977); *Hamill* v. *Neikind,* 171 Conn. 357, 358, 370 A.2d 959 (1976); *State* v. *Gosselin,* 169 Conn. 377, 381, 363 A.2d 100 (1975). It is for the jury to untangle the knotted and sometimes broken lines of testimony and we will disturb their fact finding only where there is insufficient evidence to justify a finding of guilt beyond a rea-

---

[2] The ballistics evidence introduced by the state indicated that a number of guns were fired during the incident. Contrary to the defendant's argument, the state's failure to account for every shot fired does not in itself create reasonable doubt as to this defendant's guilt.

sonable doubt. *State* v. *Ortiz,* 169 Conn. 642, 646, 363 A.2d 1091 (1975). It is the province of the jury and not of the court to resolve discrepancies in a witness' testimony which in any way reflect upon his credibility. *United States* v. *Tropiano,* 418 F.2d 1069 (2d Cir. 1969), cert. denied, 397 U.S. 1021, 90 S. Ct. 1258, 25 L. Ed. 2d 530 (1970).

## B

The defendant further claims that the state did not adduce any testimony that the defendant actually fired a gun. The state argues that while the defendant was not shown to have pulled the trigger himself, he may be held to the same degree of responsibility as his accomplice pursuant to General Statutes § 53a-8. The court instructed the jury that the defendant could be found guilty of assault in the first degree in any one of several ways under General Statutes § 53a-8. Section 53a-8 provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

On the evidence presented, the jury could reasonably have concluded that the defendant intentionally aided and abetted the unidentified gunman in a plan of retaliation for Taylor's previous assault on Gaynor. The defendant and the unidentified gunman arrived at the bar together. The unidentified individual joined the defendant at the meeting in the parking lot and stood right beside Gaynor. The unknown individual began to fire at Taylor at the same time that the defendant began to punch

Taylor. Subsequent to the shooting, the defendant and the gunman ran down the road together and left in the same car. The defendant's statement to Inspector Nuber was additional evidence that the attack in Chetti's parking lot was an intentional joint effort. From these facts, it was not unreasonable for the jury to conclude that the defendant aided and assisted in the crime of first degree assault against Taylor. Construing the evidence in the way most favorable to sustaining the verdict rendered by the jury; *State* v. *Tucker,* 181 Conn. 406, 418, 435 A.2d 986 (1980); *State* v. *Jackson,* 176 Conn. 257, 262, 407 A.2d 948 (1978); *State* v. *Ortiz,* supra, 645–46; *State* v. *Malley,* 167 Conn. 379, 381, 355 A.2d 292 (1974); we conclude that there was sufficient evidence for the jury to find that the defendant intentionally aided the unidentified gunman.[3]

## II

The defendant's second claim is that the trial court erred in limiting his cross-examination of a physician called by the state. Dr. Ferdinand Montegut examined Taylor at the Griffin Hospital emergency room and performed a three hour operation on him. The state called Montegut to testify as to the nature and seriousness of the wounds

---

[3] The absence of direct testimony of intended aid or assistance is not fatal to the state's case. The jury may draw reasonable inferences from the evidence; *State* v. *Tucker,* 181 Conn. 406, 435 A.2d 986 (1980); and in this case the state established circumstantial evidence supporting the charge. So far as probative force is concerned, there is no legal distinction between direct and circumstantial evidence. *State* v. *Ruiz,* 171 Conn. 264, 276, 368 A.2d 222 (1976); *State* v. *McGuiness,* 158 Conn. 124, 129, 256 A.2d 241 (1969). In a case like this one, where one actor remains at large and unidentified and the defendant chooses not to testify, direct evidence may be unavailable. See *State* v. *Ortiz,* 169 Conn. 642, 645, 363 A.2d 1091 (1975).

suffered by the victim.[4]   Montegut stated his opinion that the injuries sustained by Taylor constituted "serious physical injury" as that term is defined in General Statutes § 53a-3.[5]

On cross-examination Montegut indicated that prior to his testimony the state's attorney had read to him the statutory definition of serious physical injury.  Defense counsel then posed a hypothetical question to the doctor.  The question presented the basic facts of the victim Taylor's previous assault on the defendant.[6]  The state objected on the grounds that the question (1) assumed facts not in evidence, (2) was not material to the issues in this case, and (3) attempted to interject the previous assault upon the defendant into this case.  In response to the state's attorney's objection to the hypothetical question, defense counsel argued that he was testing the expertise of an expert witness by posing a hypothetical question and that in such circumstances the question need not be based on facts in evidence.  It was defense counsel's claim that where the statute provides four grounds for finding serious physical injury, and the doctor con-

---

[4] The state also introduced the victim's hospital records.

[5] "[General Statutes] Sec. 53a-3. DEFINITIONS. . . . (4) 'Serious physical injury' means physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ."

[6] The hypothetical question posed by defense counsel was: "Now, assuming, doctor, that a 24-year-old man was cut on the left side of the face with a beer bottle, running from the left eye down to the mouth, to such a degree that it required over a hundred sutures to close the wound, would you—could you give us an opinion on that, doctor, as to whether or not that constituted a serious physical injury, as the State's Attorney told you the definition?"  The court also excluded other questions in which defense counsel asked the doctor his opinion regarding "serious disfigurement" and "loss or impairment of function of bodily organs."

cluded that one of the requirements was satisfied, he may test the doctor's basis for that conclusion by posing questions regarding the other categories constituting "serious physical injury." The trial court sustained the state's objection on materiality grounds and the defendant has claimed that this limitation on cross-examination denied his right to confrontation.

### A

The right of an accused to effectively cross-examine an adverse witness is embodied in the confrontation clause of the sixth amendment. *Davis* v. *Alaska,* 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *Douglas* v. *Alabama,* 380 U.S. 415, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965). "It is established, however, that cross-examination may be limited where the sixth amendment interest is outweighed by the danger of harassing witnesses or unduly prejudicing the jury." *United States* v. *Kizer,* 569 F.2d 504, 505 (9th Cir. 1978), citing *Davis* v. *Alaska,* supra. The general rule is that restrictions on the scope of cross-examination are within the sound discretion of the trial judge; *United States* v. *Summers,* 598 F.2d 450, 460 (5th Cir. 1979); *United States* v. *Siegel,* 587 F.2d 721, 727 (5th Cir. 1979); but this discretion comes into play only after the defendant has been permitted cross-examination sufficient to satisfy the sixth amendment. *United States* v. *Summers,* supra; *United States* v. *Vasilios,* 598 F.2d 387, 389 (5th Cir. 1979). Therefore, the threshold question is whether the cross-examination of Montegut accorded to defense counsel at trial satisfied sixth amendment standards as enunciated in *Davis* v. *Alaska,* supra.

The constitutional standard is met when defense counsel is "permitted to expose to the jury the facts from which the jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Davis* v. *Alaska,* supra, 318; *United States* v. *Vasilios,* supra. In this case the standard is clearly met. Evidence of the prior assault was already before the jury. The court restricted only questions designed to re-emphasize the previous assault and it is clear that these questions did not directly relate to the doctor's "reliability" as set forth in *Davis* v. *Alaska,* supra. The limitation of cross-examination did not prevent defense counsel from sufficiently investigating Montegut's reliability. In this instance, defense counsel was seeking evidence which was both collateral and cumulative.[7] See *United States* v. *Perry,* 550 F.2d 524, 532 (9th Cir. 1977) (limitation of cross-examination permitted where facts sought were of "questionable relevance."); *United States* v. *LaRiche,* 549 F.2d 1088, 1097 (6th Cir. 1977).[8] A hypothetical question may not be asked of an expert where it is so lacking in material, rele-

---

[7] We emphasize that this is not a case in which the defendant was denied sufficient opportunity to impeach a "key" government witness; *United States* v. *Summers,* 598 F.2d 450, 460 (5th Cir. 1979); *United States* v. *Brady,* 561 F.2d 1319, 1320 (9th Cir. 1977); *United States* v. *Callahan,* 551 F.2d 733, 737 (6th Cir. 1977); who may have possessed "substantial reason to cooperate with the government." *United States* v. *Elliott,* 571 F.2d 880, 908 (5th Cir. 1978); *United States* v. *Crumley,* 565 F.2d 945, 949 (5th Cir. 1978); *United States* v. *Mayer,* 556 F.2d 245, 248–49 (5th Cir. 1977) (Wisdom, J.) and cases cited. In such a case any limitation on cross-examination would be subject to the most rigorous review.

[8] See also *Skinner* v. *Cardwell,* 564 F.2d 1381, 1389 (9th Cir. 1977): "Relevancy and the proper extent of cross-examination are closely interrelated. For example, a topic which is highly material deserves extensive cross-examination. But some topics may be of such minimal relevance that the trial court would be justified either in totally prohibiting cross-examination about them or in allowing

vant and essential facts. *State* v. *Vennard,* 159 Conn. 385, 396, 398, 270 A.2d 837, cert. denied, 400 U.S. 1011, 91 S. Ct. 576, 27 L. Ed. 2d 625 (1970); *State* v. *Wade,* 96 Conn. 238, 113 A. 458 (1921).

## B

The only remaining question is whether the trial court abused its discretion in restricting the scope of cross-examination. "To establish an abuse of discretion, appellants must show that the restrictions imposed upon their cross-examination were clearly prejudicial." *United States* v. *Elliott,* 571 F.2d 880, 909 (5th Cir. 1978); *Gordon* v. *United States,* 438 F.2d 858, 865 (5th Cir. 1971). Our standard regarding cross-examination of an expert witness is that, subject to the sound discretion of the court, any fact pertinent to the inquiry may be assumed in a hypothetical question to test the skill, learning or accuracy of the expert, or to ascertain the reasonableness or expose the unreasonableness of the opinion expressed. *Livingstone* v. *New Haven,* 125 Conn. 123, 127–28, 3 A.2d 836 (1939). "The purpose of such cross-examination is to test the credibility of the witness and the accuracy and reasonableness of his direct testimony." *Floyd* v. *Fruit Industries, Inc.,* 144 Conn. 659, 667, 136 A.2d 918 (1957).

It is clear that the primary purpose of the hypothetical question was to remind the jury again of the victim's earlier assault upon the defendant. We cannot say that the court could not reasonably decide that an answer to the question would throw

only limited questioning. . . . The test for whether cross-examination about a relevant topic was effective, i.e., whether the trial court has abused its discretion, is whether the jury is otherwise in possession of sufficient information upon which to make a discriminating appraisal of the subject matter at issue . . . ."

little light on the accuracy or reasonableness of the direct testimony. It follows that exclusion of these questions fell within the limits of the discretion provided by our rule. See *Floyd* v. *Fruit Industries, Inc.,* supra. The trial court's exercise of discretion is further supported by the potentially prejudicial and misleading nature of the inquiry as balanced against its minimal probative value. "Evidence may be relevant, and yet its relevancy may be so slight and inconsequential that to receive it would be to distract attention that ought to be concentrated on what bears directly on vital points, and confuse rather than to illuminate the case." *State* v. *Wade,* 96 Conn. 238, 248, 113 A. 458 (1921) ; *State* v. *Sebastian,* 81 Conn. 1, 4, 69 A. 1054 (1908). The jury had been apprised of the earlier battle between Taylor and the defendant as well as the serious nature of the injuries sustained by the defendant. The trial court properly exercised its discretion in concluding that the defense counsel's efforts to further pursue the prior assault were unduly repetitious and misleading to the jury and that its relevance to this case was limited.

There is no error.

In this opinion the other judges concurred.