Katherine M. MEYER, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 77–F–101.

United States District Court, D. Colorado.

Jan. 26, 1979.

Jack Kintzele, Kintzele & Collins, Denver, Colo., for plaintiff.

Jerre W. Dixon, Asst. U. S. Atty., Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

SHERMAN G. FINESILVER, District Judge.

Plaintiff, Katherine Meyer, brings this action against defendant, United States of America, for injuries she incurred as a result of dental extraction of her impacted third molars. She contends that the attending dentist, Kent L. Aitkin, D.D.S., a civilian dentist associated with defendant's Family Dental Clinic, Lowry Air Force Base, was negligent in his administration of dental procedures on plaintiff's mouth. She further contends that there was failure by defendant or its agents in obtaining informed consent of plaintiff. As a result of the acts complained of plaintiff contends that she has permanent injuries to the lingual nerve and the right side of her mouth, gums and tongue manifested by loss of sensation and taste. The action arises under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2679.

Upon the issues joined and tried on the merits, we hold in favor of the defendant. We find and conclude as follows:

## I.

As the wife of a serviceman, plaintiff was an eligible patient at the Family Dental Clinic and on March 29, 1974, she was seen by Kent L. Aitkin, D.D.S. After his examination, Dr. Aitkin advised her that she needed several fillings and recommended extraction of her upper and lower third molars (wisdom teeth). He advised her that the teeth were impacted and absent removal she would have trouble in the future. She was already experiencing distress and pain from the molars. These molars are the end back teeth and generally are not functional either in concert or alone.

Plaintiff returned to the clinic on April 12, 1974, at which time two right third molars were removed by Dr. Aitkin. Packing was placed in the extracted areas. She was allowed to return home with the packing in place, additional replacement packing, medications, prescriptions for pain and infection, and instructions on care at home.

Later that same evening (or in the early morning hours), plaintiff had a coughing spell and was unable to swallow apparently because of residual bloody and boney fragments resulting from the operation. She was seen in the emergency room at Fitzsimons Army Medical Center and received a prescription that offered her relief. She returned home.

Shortly thereafter she experienced numbness to the right side of the tongue and right gum line.

On April 26, 1974, she was seen again by Dr. Aitkin at the clinic who noted that healing was proceeding in regular fashion. He informed her that her complaints of numbness to the tongue, right gum and partial impairment of sensation were temporary and would return in a matter of months. He also noted this condition was normal in some molar extractions.

Thereafter she was seen by Dr. Jones, an oral surgeon attached to Lowry Air Force Base. She was advised that the loss of sensation and numbness could dissipate in eighteen months, and failure to do so might mean permanent loss of lingual sensation to the right side of the mouth and, in that event, she should consult a lawyer. This suit was filed in January of 1977, following earlier filing of an administrative claim.

It is unrefuted that at this time plaintiff suffers from numbness, permanent loss of sensation and loss of taste in the right front quadrant of her tongue, and right front right gum.

Plaintiff related that her injury as a result of nerve damage manifests itself in her inability to taste bland foods, lack of taste differentiation on the right side of the tongue, numbness to this area and to the right gum, and a tendency to stutter. Anxiety over the condition, she contends, makes her unsure of her speech and this has affected her progress and effectiveness as a banking executive for a savings and loan banking facility.

Dentists agree that the lingual nerve has been damaged. Causation of the nerve damage and question of informed consent are matters in dispute.

## II.

Dr. Aitkin, a dentist in general practice, had specialized dental surgical experience during his three year military service and surgical rotation at each of three duty stations. He had a three month training period in dental surgery at Fort Hood and like periods in Vietnam and in a V.A. residency dental program in California. He related that he had previously performed numerous extractions of third molars in military service and on a weekly basis at the Family Dental Clinic.

Dr. Aitkin does not recollect the various surgical procedures undertaken by him in treating the plaintiff nor the exact conversation he had with plaintiff prior to surgery. His testimony was based in part on his recollection refreshed by the patient's dental chart. He also based his testimony on his habit, custom, and treating routine followed over a considerable period of time.

## III.

Prior to the extraction procedure, Dr. Aitkin reviewed the x-rays of the teeth in

question and in his opinion they were sufficient for the surgical procedure.* He administered three injections of novocaine to deaden the pain. The top molar was removed without incident. The lower third molar presented more difficulty because of its mesial angular impaction. He cut a small flap in the lower right gum proximate to the lower molar, observed the impacted molar, removed the bone over the tooth by use of dental instruments, and sectioned and surgically removed the molar. The flap was sutured and area cleansed. Additional injections of novocaine were administered during the operative period. There is no evidence that the lingual nerve was visible to Dr. Aitkin during the operation. The evidence is clear that the nerve may be located along the gum line or elsewhere in the jaw. The nerve is frequently hidden, and the exact location not discernible. In his opinion, x-rays of the molars and locations of roots are of no assistance in knowing where the lingual nerve is situated. The preponderance of the evidence supports this view.

### IV.

One issue in the case is that of informed consent. Plaintiff testified that she did not receive advice and warnings by Dr. Aitkin as to potential risks of the surgical procedure including possible nerve damage, and had she been so advised she may have declined to go through with the operation.

Dr. Aitkin testified that his habit and custom since dental school, during his three year military service and extending to his association at the Family Dental Clinic, was to give standard advice to patients about extraction of third molars. He advised patients as to the need for the extraction, potential for nerve damage from extraction of the molars including loss of sensation or taste, and general details of the extraction procedure. He generally gave the advice to the patient when he first diagnosed the need for the extraction, although, from his custom, it could come at any time prior to the surgical procedure.

■ While the testimony is in conflict, we find (a) that plaintiff was informed that as a result of the extractions there was a possibility of damage to the nerves that were proximately located in the area of the molars and roots, and (b) she fully and voluntarily consented to the extraction and medical procedure.

We find that Dr. Aitkin's habit and custom, and routine of advising patients of potential risk as a result of molar extraction was present with plaintiff and he acted in conformity with that long established habit and custom.

■ We further find that Dr. Aitkin advised plaintiff in a general way of the common and potential risks of extraction of the lower third molar, as shown by his habit, custom and routine, and corroborated by dental assistants Mugele and Smith. He thus complied with a dentist's or physician's duty under Colorado law to inform a patient in a general way as to procedures to be followed in the operation and potential risks.

Regarding habit and routine practice, the Federal Rules of Evidence provides helpful instruction:

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

Federal Rules of Evidence, Rule 406, 28 U.S.C.

Several cases are informative on the effect of habit and routine evidence.

The Supreme Court has indicated that "[p]roof that an employer engaged in racial discrimination prior to the effective date of Title VII might in some circumstances support the inference that such discrimination continued, particularly where relevant aspects of the decisionmaking process had undergone little change. Cf. Fed.Rule Evid.

---

* A point of contention in this suit is the sufficiency of the x-rays.

406 . . .." *Hazlewood School District v. United States*, 433 U.S. 299, 309–10 n. 15, 97 S.Ct. 2736, 2743, 53 L.Ed.2d 768 (1977).

The Court of Appeals for the Sixth Circuit has ruled that evidence of a routine practice of a construction company would have been relevant, under Rule 406, in proving the conduct of the company on a particular occasion. Defendant, who was charged with extortion, should have been able to cross-examine the company's job site supervisor as to other confrontations he had with other union representatives in similar circumstances. Such evidence might have established a routine practice of the company, which employed non-union workers, of paying off local unions for the sake of expediency and not out of fear. *United States v. Callahan*, 551 F.2d 733 (6th Cir. 1977).

Rule 406 is, of course, merely a codification of the common law rule of evidence which existed prior to the adoption of the Federal Rules of Evidence in 1975. *See* 1 Wigmore § 92 (3rd ed.). Thus, cases dealing with habit are illustrative even if decided prior to the formal enactment of the rules.

In *Ryan v. Aspen Highlands Skiing Corporation*, No. 75–1533 (10th Cir. Aug. 17, 1976) (not for routine publication), the Tenth Circuit Court of Appeals held that the trial court properly admitted evidence as to the defendant's precautionary customs, procedures, and habits in operating the ski chairlift in a personal injury action. The Tenth Circuit has also stated that "[e]vidence of habit or custom is relevant to an issue of behavior on a specific occasion because it tends to prove that the behavior on such occasion conformed to the habit or custom." *Frase v. Henry*, 444 F.2d 1228, 1232 (10th Cir. 1971).

Additionally, the Colorado Supreme Court has said:

> If it had been proposed to show that the gripman had been in the service of the company for considerable time, and that it had been his particular habit or custom not to stop in the middle of the block, this would have lent corroboration to his testimony that he did not so stop; for, in case

of doubt as to what a person has done, it may be considered more probable that he has done what he has been in the habit of doing than that he has acted otherwise. *Denver Tramway Co. v. Owens*, 20 Colo. 107, 124, 36 P. 848, 854 (1894). *See also* McCormick on *Evidence* § 195 (2d ed. 1972); Lewan, *Rationale of Habit Evidence*, 16 Syracuse L.Rev. 39 (1962); 59 A.L.R.3d 1327; 28 A.L.R.3d 1293; 29 Am.Jur.2d, Evidence §§ 303, 316, 317.

In the context of Rule 406, habit is a person's or organization's practice of handling a particular kind of situation with a specific type of conduct. Habit is one's regular response to a repeated specific situation. McCormick on *Evidence* § 195 (2d ed. 1972). In similar fashion, an organization's regularity of action is within the purview of Rule 406.

Habit in modern usage is described as "a tendency to act in a certain way or to do a certain thing; usual way of acting; custom; practice. . . ." World Book Dictionary (1974 ed.).

In the instant action there is substantial evidence establishing that the principal actor (Dr. Aitkin) routinely and regularly informed dental patients of the potential risks involved in extraction of third molars. His testimony is supported by two chair-side dental assistants (Mugele and Smith) neither of whom heard the testimony of the other (sequestration pursuant to Rule 615, Fed.R.Evid. was in force during the trial).

## V.

Other issues in the case are the question of negligence and causation of plaintiff's injury.

Not one of the dentists or oral surgeons who testified disputed the necessity of the removal of the third molars. We also note from the testimony that the roots of the lower molar may rest on or are within close proximity to the lingual nerve canal of the lower jaw and slight movement or disturbance to the area can have an adverse effect on this extremely sensitive nerve.

From the testimony we also glean several possible causes of lingual nerve damage. These include the following: damage resulting from the needle used for anesthesia injections, the mechanics of extracting the tooth due to the tooth's proximity to the lingual nerve, manipulation of the soft tissue near the teeth resulting in severing or bruising, traumatizing or crushing the lingual nerve, or damage to the nerve being hit by the improper use of dental instruments by the dentist during the extraction process. Other more remote causes are damage occasioned by suture application and improperly incising the flaps of the gums.

■ Contrary to plaintiff's contentions, we find that the extraction of the molars was not inordinately or suspiciously long nor that the additional injections of novocaine during the dental procedure indicate negligence. The extraction of the lower molar was performed properly and in a medically acceptable manner, and within standards of care in the community. The evidence supports our finding that the procedure followed by Dr. Aitkin was proper for the removal of the lower molar and correctly performed. Drs. Aitkin and Leone (plaintiff's family dentist) followed similar dental techniques in the surgery involved.

## VI.

■ Several expert witnesses testified to causation of plaintiff's nerve damage.

Dr. Edward Leone, Jr., has been plaintiff's family dentist since 1975. He served as a dentist in the military and commenced his dental practice as a general practitioner in the Denver area in 1975. During his military service he had one three month rotation in dental surgery during his one-year dental internship in the Air Force.

He testified that the most likely cause of plaintiff's lingual nerve damage was a surgical instrument striking the nerve during the lower molar extraction by Dr. Aitkin. He testified that in his opinion the nerve was severed and the striking of the nerve or blow to the nerve through use of instruments was substandard dentistry, and Dr. Aitkin's use of instruments was done in a negligent manner.

Dr. Leone also testified that he frequently performs molar extractions and paresthesia can occur even if there is no negligence on the part of the dentist. He testified that he always warns his patients of the potential for nerve damage in third molar surgery. He could not recall any of his patients having lingual damage from dentistry performed by him.

He testified that he doesn't know if extensive manipulation to the tooth was necessary in the surgery. He related, however, that he wouldn't expect much manipulation for removal of the molar in question. He discounted the possibility that nerve damage was caused by injections of novocaine or extraction of the tooth itself.

Dr. Leone was in agreement that x-rays do not indicate the location of the lingual nerve. He testified that his dental x-rays of plaintiff reflected good healing and there was no indication that substantial amounts of bone had been chipped away by the dentist in sectioning the tooth in the extraction procedure.

Dr. Leone further testified that generally the third molar did not present a difficult extraction problem and could be undertaken by a dentist with his experience and/or other general practitioners with comparable experience. He said generally there was no necessity for referral of third molar extractions to an oral surgeon.

Dr. Donavon Garehime, an oral surgeon with thirty years experience, testified that there is no way of telling the exact cause of paresthesia; that lingual paresthesia, as here, may result in absence of medical negligence; that the necessity of removal of third molars is based on the clinical judgment of the dentist and his past experience in this type of surgery; that in the Denver metropolitan area more impacted third molars are extracted by general practitioners than oral surgeons and contrary to the contentions of plaintiff, there was no necessity of removal of the third molars by an oral surgeon.

He also testified that nothing is present in this instant case indicating improper dental surgery was performed or that the dental services rendered by Dr. Aitken fell below standards of the dental community; that an oral surgeon would not have followed any different dental procedure than that undertaken by Dr. Aitkin; and that in his personal practice there have been instances of lingual nerve damage and this phenomena is unpredictable as the lingual nerve meanders through the jaw and its location is not discernable in x-rays; that the lingual nerve is situated in other than its "normal" position in half of patients having third molar extractions; that while the x-rays used by Dr. Aitkin didn't show root tips better x-rays would not have prevented the incident; he probably would not have proceeded with the 1974 x-rays in question but has gone ahead in the past with comparable x-rays.

Dr. Garehime testified that many general practitioners would have proceeded with similar x-rays and many practitioners in their referrals of patients to him expressly request he proceed with x-rays in conditions similar to the subject x-rays.

He further testified that judicious care must be used in removing third molars because of the potential proximity of lingual nerves to the molar; however, there can be disturbances or bruising of the lingual nerve with little trauma or pressure.

Dr. Garehime also testified that full warnings of possibility of lingual nerve damage were not routinely given by general dental practitioners in the Denver area; further, that it is not a standard procedure for warnings to be shown in patients' records maintained by dentists (the patient record of plaintiff is silent on the question of warnings by the dentist or consent of plaintiff for the surgical procedure).

He also related that he has known of cases involving nerve damage where return of function in like cases can occur up to seven years; however, he considers damage here permanent.

### VII.

Plaintiff has failed to establish (a) that defendant, Dr. Aitkin or other agents of defendant acted negligently and below the standard of dental care and treatment in the relevant Colorado and Denver area and (b) Dr. Aitkin's dental surgery and acts proximately caused injuries incurred by plaintiff.

Dr. Aitkin exercised reasonable and ordinary care and diligence in the exercise of his responsibility to perform extractions.

We find that the x-rays taken were adequate to show the location and angle of the teeth and that in every particular Dr. Aitkin had the qualifications to undertake the dental procedures to extract the third molars. We further find that the procedure and dental service was within the experience and qualifications of general dental practitioners in the Denver community.

Dr. Aitkin was not negligent in not referring plaintiff to an oral surgeon. We have found that there was adequate warning of possible nerve damage given to plaintiff and informed consent by plaintiff for the extractions of the molars.

The injuries complained of were a reasonable risk of the molar extraction explained to plaintiff by Dr. Aitkin.

We have considered and reject plaintiff's contentions that the failure of x-rays to show root location of the molars constituted proximate cause of plaintiff's injury; that Dr. Aitkin used an inadequate x-ray machine and proceeding with such x-rays was negligent; that Dr. Aitkin did not have qualifications, experience and background to conduct the surgery; that plaintiff's paresthesia is the result of the negligent dental procedure undertaken by Dr. Aitkin; and further, that no showing has been made that absence of Dr. Aitkin's regular chairside dental assistant was a proximate or contributory cause of the injury complained of.

### VIII.

Plaintiff has failed to establish by a preponderance of the evidence that action or

inaction on the part of the government or its employees was the proximate cause of nerve damage incurred by plaintiff or that Dr. Aitkins was negligent in his treatment of the patient. We find that there is persuasive evidence of a lack of negligence of defendant or its agents.

Dental procedures were within boundaries of community medical standards and were occasioned with skill and care that meet the standards of dental surgery and post-operative care in the Denver medical and dental community.

### IX.

We have considered whether the doctrine of res ipsa loquitur is applicable. The basic conditions prerequisite to the application of res ipsa under Colorado Law are as follows:

Before the doctrine can be applied, the event must be one which would ordinarily not occur in the absence of someone's negligence. It must be caused by an agency or instrumentality within the exclusive control of the defendant. Further it must not have been due to any voluntary action or contribution on the part of the plaintiff. And the evidence as to the true explanation of the event must be more readily accessible to the defendant than to the plaintiff.

*Hilzer v. McDonald*, 169 Colo. 230, 236, 454 P.2d 928, 931 (1969).

■ We find that res ipsa is not applicable as the event (nerve damage) is one that can occur in the absence of someone's negligence.

Arguendo, if it is applicable, we specially find and conclude that the defendant has proved the absence of negligence by a preponderance of the evidence.

Specifically, we find and conclude that there was no violation of the standard of care with regard to the dental procedure. Plaintiff has failed to establish that the nerve damage was caused by Dr. Aitkin's operative acts.

Several possible causes of nerve damage have been advanced. However, in our function as trier of the facts, we are led to the inescapable conclusion that the evidence presents no more than an equal choice of probabilities as to the cause of the nerve damage. Damages or injury to the nerve in question do not connote or indicate negligence.

### X.

We conclude that defendant, United States of America, and its employees were not negligent in their surgical and dental treatment of plaintiff. We further conclude, therefore, that negligence by defendant or its agents was not the proximate cause of plaintiff's injuries.

There was no negligence on the part of Dr. Aitkin in the extraction of the lower third molar of plaintiff; further, plaintiff was informed of the risks of the surgery and agreed to the extraction with that knowledge.

### XI.

■ We find that this action is timely brought and reject defendant's contention that the statute of limitations bars the action. The cause of action did not accrue earlier than November 1974, and the filing of the claim on July 28, 1976 was within the two year limitation period of 28 U.S.C. § 2401. *See Exnicious v. United States*, 563 F.2d 418 (10th Cir. 1977).

We reject defendant's contentions that plaintiff should have filed her claim within two years following April 12, 1974. She acted reasonably in her belief that the results of the nerve damage would disappear, and she relied on dental advice in that belief. When the manifestations of the nerve damage continued, she timely filed her suit.

### ORDER

The issues are joined in favor of the defendant, United States of America and against plaintiff, Katherine M. Meyer, and judgment shall enter for defendant, United States of America. Each party to pay its or her own costs.

This opinion constitutes our findings of fact and conclusions of law.