**SIMPLEX, INC., Plaintiff–Appellee,**

v.

**DIVERSIFIED ENERGY SYSTEMS, INC., Defendant–Appellant.**

No. 87–2089.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 8, 1987.

Decided June 6, 1988.

Rehearing Denied July 6, 1988.

trial motion for judgment non obstante veredicto (judgment n.o.v.) or, in the alternative, for a new trial. Diversified also appeals Judge Mill's exclusion of certain expert testimony as well as evidence regarding other similar lawsuits and disputes involving the plaintiff, Simplex, Inc. We affirm.

## I FACTS

Beginning in March, 1985, Diversified executed a series of contracts with Simplex for the purchase of various electrical generators, control panels, test equipment, oil tanks, and hand pumps, all intended for ultimate resale to the Federal Aviation Administration as part of a larger sales contract. Following the untimely receipt of an allegedly deficient prototype unit, Diversified cancelled a purchase order calling for sixty-nine generator units. Other alleged deficiencies caused Diversified to cancel or repudiate the balance of its purchase orders.

Simplex filed its five-count complaint on January 22, 1986, alleging Diversified's anticipatory and actual breach of the various contracts. In turn, Diversified's answer and counterclaims alleged that Simplex breached the agreements by failing to meet the contract specifications. Following a two-week trial, the jury returned a verdict in favor of Simplex on each of its five counts and against Diversified on its counterclaims.

## II DISCUSSION

Robert A. Babcock, Margolin & Kirwan, Kansas City, Mo., for defendant-appellant.

Stephen R. Kaufmann, Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., Springfield, Ill., for plaintiff-appellee.

Before BAUER, Chief Judge, and COFFEY and KANNE, Circuit Judges.

BAUER, Chief Judge.

Diversified Energy Systems, Inc. appeals from an adverse jury verdict and challenges the district court's denial of its post-

A. Exclusion of Diversified's Expert Testimony

During trial, Diversified proffered two of its own employees as experts—Dennis Bogner, a former Simplex employee, and Sangi Narula, Diversified's Chief Engineer. Judge Mills sustained Simplex's objection and refused to permit either employee to give expert testimony because neither had been designated previously as an expert. Judge Mills also found that Bogner was unqualified to render expert testimony due to his lack of formal education or training.

■ The decision whether to admit evidence is a matter "peculiarly within the competence of the trial court and will not be reversed absent a clear abuse of discretion." *Soderbeck v. Burnett County, Wis.*, 821 F.2d 446, 453 (7th Cir.1987) (quoting *Ellis v. City of Chicago*, 667 F.2d 606, 611 (7th Cir.1981)); *see also United States v. Lundy*, 809 F.2d 392, 394–95 (7th Cir. 1987) (exclusion of expert testimony is to be affirmed unless "manifestly erroneous"); *United States v. Davis*, 772 F.2d 1339, 1343–44 (7th Cir.), *cert. denied*, 474 U.S. 1036, 106 S.Ct. 603, 88 L.Ed.2d 581 (1985). Although Diversified fails even to allege, much less show, that Bogner was in fact qualified to give expert testimony, it nevertheless argues that his exclusion as an expert witness constitutes an abuse of discretion. Such an anomaly leaves this court with the absurd proposition that refusal to allow an unqualified witness to render expert testimony somehow requires reversal. Diversified's failure to allege Bogner's expert qualifications obviously undermines any challenge to the exclusion of his expert testimony. Its contention that Narula should have been allowed to testify as an expert is equally unavailing.

■ Diversified argues extensively that Simplex's interrogatory [1] requesting the "name and address of each person *retained* as an expert witness in this case" (emphasis added) did not obligate the disclosure of "in-house" experts. Whatever the merits of such a distinction,[2] Diversified nevertheless was obligated to designate its experts pursuant to both a Standing Order of the United States District Court for the Central District of Illinois and by order of Magistrate Evans dated May 2, 1986. Paragraph six of the Standing Order explicitly directs each party to disclose, prior to the final pretrial conference, "names and addresses of witnesses each party intends to call to testify at the trial including the names of expert witnesses." (TR. 765–766.) Although Diversified's pretrial statement listed Bogner and Narula as witnesses, they were never designated as expert witnesses. Magistrate Evans's order similarly required Diversified to disclose its experts by August 15, 1986. Yet, Diversified never made such a designation.[3]

One hardly could say with a straight face that Judge Mills was "manifestly erroneous" in excluding Diversified's expert testimony under these circumstances. Our rules of civil procedure are designed to facilitate the complete disclosure of all relevant information before trial in order to eliminate unfair surprise and ultimately promote accurate and just decisions. Diversified's conduct smacks of contempt for these goals. Although temptations may exist, a litigant cannot expect to profit from its ill-gotten gains. There is little question that Simplex would have been disadvantaged severely if it were confronted for the first time at trial by previously undisclosed experts. If Diversified intended to proffer its employees as experts at trial, it was obligated to disclose that fact by virtue of both the District Court's Standing Order and Magistrate Evans's

---

**1.** Before trial, Diversified received and answered Simplex's interrogatories. Interrogatory No. 1 of Simplex's Third Set of Interrogatories asked Diversified to:

State the name and address of each person retained as an expert witness in this case.

Diversified answered by stating:

Diversified Energy Systems has not specifically retained an expert as such....

**2.** Diversified's scant citations supply little support for its contention that in-house experts need not be designated as experts in the face of such direct disclosure mandates. *Virginia Elec. & Power Co. v. Sun Shipbuilding & Dry Dock Co.*, 68 F.R.D. 397 (E.D.Va.1975), for example, holds merely that in-house experts, not specifically retained for litigation, are to be treated as ordinary witnesses, thus "open[ing] up [their] opinion[s], based on facts gained in the course of their employment, to discovery under Rule 26(b)(1)." *Id.* at 408. Thus, the case is completely inapposite to the designation of in-house experts pursuant to a general expert witness disclosure order.

**3.** Diversified also contends that because Bogner and Narula were eligible to render opinion testimony as lay witnesses pursuant to Federal Rule of Evidence 701, "they were not required to be identified as 'experts.'" Although such an assertion might be relevant to the admission of lay-opinion testimony, it is irrelevant to the issue of designating experts pursuant to a disclosure order.

May 2, 1986 order. If a distinction between in-house and retained experts can ever justify nondisclosure in the face of two unambiguous court orders, Diversified has failed completely to make it here.

Diversified's contention that the district court refused to allow Bogner and Narula to give their lay opinions also proves an inept smoke screen based on an untenable view of the record and largely inapposite case law. Indeed, our review of the record indicates that the district court permitted both witnesses to render lay opinions.[4]

Rule 701 of the Federal Rules of Evidence provides that:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inference is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

FED.R.EVID. 701. Although somewhat confused at times, each witness was allowed to testify about his familiarity with the project specifications as well as his opinion regarding the inadequacy of the prototype as reflected in photographs of the allegedly deficient unit. (R. 785–789, 802–804.) Mr. Bogner, for example, testified that "the panels as they were being put together did not conform to the requirements of the specifications...." (R. 803.) Thus Judge Mills properly allowed Bogner and Narula to give lay opinions concerning the adequacy of Simplex's prototype unit based on their knowledge and familiarity with the contract specifications. *See Greenwood Ranches, Inc. v. Skie Constr. Co., Inc.*, 629 F.2d 518, 522 (8th Cir.1980); *Soden v. Freightliner Corp.*, 714 F.2d 498 (5th Cir. 1983).

## B. Evidence of Habit

Diversified also finds error in Judge Mills's exclusion of evidence regarding other contracts involving Simplex. Diversified argues that it should have been allowed to introduce evidence of Simplex's conduct with respect to other contracts to establish Simplex's routine practice of late deliveries and defective performance pursuant to Rule 406 of the Federal Rules of Evidence.[5]

We are cautious in permitting the admission of habit or pattern-of-conduct evidence under Rule 406 because it necessarily engenders the very real possibility that such evidence will be used to establish a party's propensity to act in conformity with its general character, thereby thwarting Rule 404's prohibition against the use of character evidence except for narrowly prescribed purposes. *See Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494 (4th Cir.1977). Moreover, such collateral inquiries threaten the orderly conduct of trial while potentially coloring the central inquiry and unfairly prejudicing the party against whom they are directed. *Id.* at 511. Thus, before a court may admit evidence of habit, the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere "tendency" to act in a given manner, but rather, conduct that is "semi-automatic" in nature. *See* FED.R. EVID. 406 (Notes of Advisory Committee); 23 Wright and Graham, FEDERAL PRACTICE AND PROCEDURE, § 5273 (1980) p. 33 (evidence of habit must be highly particularized); *Wilson*, 561 F.2d at 511 (pattern-of-conduct or habit evidence must be " 'numerous enough to base an inference of systematic conduct' and to establish 'one's regular response to a repeated specific situation' ").

We are extremely dubious of Diversified's contention that late and inadequate

---

4. The court acknowledged that "no employee of a corporation that is a party litigant who has any kind of information or knowledge concerning the material issues should be barred from testifying about what he knows about them with the background being testified to." (R. 767.)

5. Rule 406 states:

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eye witnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

performance of other contracts approaches the level of specificity necessary to be considered semi-automatic conduct. Our reluctance is sustained by the numerous but clearly distinguishable cases cited by Diversified. *See, e.g., Meyer v. United States,* 464 F.Supp. 317 (D.Colo.1979), *aff'd.* 638 F.2d 155 (10th Cir.1980) (habit established by dentist "routinely and regularly" informing patients of risks involved in molar extractions); *United States v. Callahan,* 551 F.2d 733 (6th Cir.1977) (routine payoffs to local union officials established habit of paying unions "for the sake of expediency and not fear"); *Spartan Grain and Mills Co. v. Ayers,* 517 F.2d 214 (5th Cir. 1975) (physical manner in which seller routinely collected eggs thereby affecting adversely the hatching rate established habit). Each case involves specific, particularized conduct capable of almost identical repetition. Conversely, the production of defective products could take an endless variety of forms. Beyond the conclusory assertion that "numerous examples of other instances of lateness and defective performance on similar contracts" exist, Diversified fails to allege any specific, repetitive conduct that might approach evidence of habit. Mere similarity of contracts does not present the kind of "sufficiently similar circumstances to outweigh the danger ... of prejudice and of confusion."[6] *See McCormick on Evidence* § 162 (1964).

 Nor has Diversified indicated the actual number of other contracts upon which it relies, making it impossible to determine if the examples are " 'numerous enough to infer systematic conduct'...." *Wilson,* 561 F.2d at 511 (quoting *Strauss v. Douglas Aircraft Co.,* 404 F.2d 1152, 1158 (2nd Cir.1968)). As noted in *Wilson,* the Rule 406 inquiry also necessitates "some comparison of the number of instances in which any such conduct occurs with the number in which no such conduct took place." *Id.* at 512. Simplex has been in business since 1934; it obviously has been a party to hundreds of different contracts.

Diversified fails even to acknowledge, much less make a comparison of the number of late and defectively performed contracts relative to those without such inadequacies. Consequently, Diversified's proffered evidence of other similar contract disputes failed to allege adequately a frequency of specific conduct sufficient to be considered semiautomatic and therefore could not properly be admitted as evidence of habit. *See G.M. Brod and Co., Inc. v. U.S. Home Corp.,* 759 F.2d 1526, 1533 (11th Cir.1985) (["The defendant's former employee's] testimony of specific instances of [defendant's] operation within his personal experience, when considered in the light of [defendant's] contractual dealings with thousands of small subcontractors and the significant differences between the types of contracts involved and the course of dealing required of them, falls short of the adequacy of sampling and uniformity of response which are the controlling considerations governing admissibility. It was, therefore, error for the district court to admit this collateral evidence as evidence of routine practice....").

## C. Jury Verdict

 Finally, Diversified challenges the trial court's refusal to direct a verdict in its favor, and the court's subsequent refusal to grant its motion for judgment n.o.v., or, in the alternative, a new trial. Before we will disturb a jury's verdict, the appellant must establish that, when viewed in a light most favorable to the appellee, the evidence so overwhelmingly favors the appellant that no contrary verdict could ever stand. *General Foam Fabricators, Inc. v. Tenneco Chemicals, Inc.,* 695 F.2d 281, 285–86 (7th Cir.1982). A standard different only in degree applies to motions for a new trial. The district court must determine whether the jury's verdict is against the weight of the evidence. *Id.* at 288; *see also Cygnar v. City of Chicago,* 652 F.Supp. 287, 290–91 (N.D.Ill.1986) (this de-

---

6. Diversified's contention that evidence of similar defects and deficiencies regarding units prepared for Diversified but ultimately sold to Power Systems, Inc. established a routine practice

fails because, even if similar, they were not sufficiently numerous to show a consistent regular response.

termination lies "somewhere in between the judgment [n.o.v.] test and a straight second-guessing of what the jury has done"). Diversified fails to meet either standard.

Although Simplex did produce and deliver a defective prototype unit after the contract date, the jury also heard evidence attributing those deficiencies to Diversified's untimely production of necessary subcomponent drawings, repeated alteration of unit requirements, and failure to inform Simplex that the contracts were "government priority rated." Thus, where the jury's verdict is based on determinations of credibility, and two permissible views of the evidence exist, we will not grant a contrary conclusion of fact. *See Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). What is abundantly clear from the record is that the jury reasonably believed that Diversified's complaints were largely the product of its own conduct. The judgment of the district court, therefore, is