**Norma BELL, etc., Plaintiff**

v.

**CONSOLIDATED RAIL CORP., Defendant**

**No. 3:99CV7106.**

United States District Court, N.D. Ohio, Western Division.

Feb. 11, 2004.

Erwin J. Leizerman, E.J. Leizerman & Associates, LLC, Michael J. Leizerman, E.J. Leizerman & Associates, LLC, Toledo, OH, for Norma Bell, Executrix of Estate of Decedent.

Erwin J. Leizerman, E.J. Leizerman & Associates, LLC, Toledo, OH, for Brandi LaCourse, Ryan Bell, Lori Bell, Bryan Bell, Nichole Bell, Kristopher Bell, Plaintiffs.

Garrick O. White, Anspach, Meeks & Nunn, Richard F. Ellenberger, Anspach, Meeks & Nunn, L.L.P., Toledo, OH, for Consolidated Rail Corporation, Defendant.

## ORDER

CARR, District Judge.

This case arises under the Federal Employers' Liability Act ("FELA"), and involves a railroad accident which claimed the lives of the engineer and the train's conductor. The plaintiff has filed a motion for summary judgment. The defendant has filed a motion to strike part or all of some of the affidavits submitted by the plaintiff in support of its motion for summary judgment. For the reasons that follow, the motion to strike shall be granted in part and denied in part.

Plaintiff's decedent, Roger Bell, was the engineer of a Conrail train that collided with a train ahead of his train. Both Bell and the train's conductor, Ray Correll, were killed in the accident. Plaintiff contends that broken or missing equipment and Conrail's operational practices caused the accident and give rise to liability under FELA. Plaintiff has filed a motion for summary judgment on the issue of Conrail's liability under FELA. Defendant seeks to strike portions of affidavits offered in support of the plaintiff's motion for summary judgment.

The affidavits at issue were submitted by other trainmen who were operating trains on the evening and in the vicinity of the collision. The statements defendant seeks to exclude are that:

1. The affiants experienced icy conditions, in addition to fog;

2. Ice and frost accumulated on their locomotives;

3. It was not uncommon for defrosters not to work;

4. It was the custom or practice of the railroad to have trains operate at track speed despite foggy conditions;

5. Crew members' ability to perform their duties would be impaired if the only operating radio were on the engineer's side of the cab; and

6. Crew members have experienced "false clear" or black signals in the past.

Defendant first contends that the affiants' statements about icy conditions are inconsistent with their testimony under oath the day after the accident at a hearing held by the National Transportation Safety Board ("NTSB"). During that hearing, the affiants testified about fog, but not about ice: they neither were asked for, nor did they volunteer, information about conditions affecting visibility other than fog.

■ Normally, inconsistent affidavits cannot supersede prior deposition testimony. *See, e.g., Reid v. Sears, Roebuck & Co.,* 790 F.2d 453, 460 (6th Cir.1986) ("A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony.") (citing *Biechele v. Cedar Point, Inc.,* 747 F.2d 209, 215 (6th Cir.1984)). However, this rule, it has been held, does not apply to the moving party. *See King v. City of Eastpointe,* Case No. 01–2303, 2003 WL 22976567, at *23 n. 1 (6th Cir., Dec 04, 2003) (unpublished) ("The purpose of this rule is to bar the non-moving party in a summary judgment proceeding from creating an issue of fact merely by making contrary statements in an affidavit, and does not apply to an affidavit filed by the moving party.").

■ In this case, it is the moving party (the plaintiff) that has submitted allegedly inconsistent statements. That party has not done so to create an issue of material fact and thereby defeat summary judgment. Instead, she simply offers the affidavits as additional support for her contentions about conditions affecting visibility prior to the accident. Thus, the existence

of purported inconsistencies does not bar consideration of the statements in the affidavit. *Id.*

▇ In any event, I do not find the affidavits to be inconsistent. The trainmen on other trains in the area of the collision testified at the NTSB hearing only about fog and its effect on visibility. Perhaps they should have been asked about other conditions affecting visibility, or even might have been expected to volunteer that information, but that subject simply did not come up. Thus, there is nothing inconsistent between their NTSB testimony and their statements in their affidavits about ice. I find no bar to the admissibility of their affidavits.

▇ Statements that other trainmen had experienced ice on their windshields are admissible, to the extent that the area in which and time at which those conditions were encountered were proximate to the area and time of the collision at issue in this case. That testimony is probative as to the conditions encountered by Bell as he was operating his locomotive.

Defendant also challenges two kinds of custom or practice testimony: namely, that locomotive defrosters often did not work, and the railroad required trains to operate at track speed even in foggy conditions.

▇ Rule 406 of the Federal Rules of Evidence governs the admissibility of this evidence, and states: "Evidence ... of the routine practice of an organization, ..., is relevant to prove that the conduct of the ... organization on a particular occasion was in conformity with the ... routine practice." As stated by the Second Circuit, "[e]vidence of specific examples of other negligent repairs might conceivably be relevant to show a party's habit or custom to abuse, but such occurrences must be 'numerous enough to base

an inference of systematic conduct.'" *Strauss v. Douglas Aircraft Co.*, 404 F.2d 1152, 1158 (2nd Cir.1968) (citing 2 Wigmore, Evidence § 376 at 305 (3d ed.1940)). This requires a showing that "the behavior at issue occurred with sufficient regularity making it more probable than not that it would be carried out in every instance or in most instances." *U.S. v. Newman*, 982 F.2d 665, 668 (1st Cir.1992). Rule 406 evidence must "rest on an analysis of instances numerous enough to [support] an inference of systematic conduct and to establish one's regular response to a repeated specific situation." *Id.*

▇ This may require "some comparison of the number of instances in which any such conduct occurs with the number in which no such conduct took place." *Strauss*, 404 F.2d at 1152. Where the proponent of habit, custom, or practice evidence fails "to allege adequately a frequency of specific conduct sufficient to be considered semiautomatic" such evidence is not admissible. *Simplex, Inc. v. Diversified Energy Systems, Inc.*, 847 F.2d 1290, 1294 (7th Cir.1988). This is necessary because "'before a court may admit evidence of habit, the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere "tendency" to act in a given manner, but rather, conduct that is "semi-automatic" in nature.'" *Bowman v. Corrections Corp. of America*, 350 F.3d 537, 549 (6th Cir.2003) (citing *Simplex*, 847 F.2d at 1293). As noted in *Simplex*, courts are

cautious in permitting the admission of habit or pattern-of-conduct evidence under Rule 406 because it necessarily engenders the very real possibility that such evidence will be used to establish a party's propensity to act in conformity with its general character, thereby thwarting Rule 404's prohibition against

the use of character evidence except for narrowly prescribed purposes.

847 F.2d at 1293.

■ In this case, several of the affiant trainmen state that it was "not uncommon [or] unusual" for the defrosters to be non-functioning. These subjective and conclusory statements are insufficient to show that Conrail, as a matter of routine practice, provided its trainmen with locomotives with inoperable defrosters.

■ On the other hand, testimony by the affiants on trains with inoperable or malfunctioning defrosters is admissible to show, on the basis of their own experience that night, the effect such condition had on visibility. A predicate to the admissibility of such testimony by other trainmen is the testimony of the crewmembers who turned the train over to Bell when the crew changed in Toledo. According to the affidavits of those crewmembers, the defrosters were not working on that locomotive. With that predicate, other trainmen operating locomotives with defective defrosters can tell the jury how that condition affected their ability to see that night. But they cannot tell the jury that inoperable defrosters were neither uncommon nor unusual.

■ Rule 406 also governs admissibility of the affiants' statements attributing to Conrail a custom, practice, and expectation that trains would operate at track speed despite fog or other inclement weather conditions. Though stated more affirmatively, and in the terms used in Rule 406, these statements are entirely conclusory. There is, I find, an insufficient foundation as to frequency and regularity for me, in conjunction with plaintiff's pending motion for summary judgment, to consider those statements as evidence that Conrail routinely required trains to run at track speed in foggy conditions.[1]

■ Plaintiff alleges that the crew had only one operable radio. She offers statements about the effect of that circumstance on a train's safe operation: namely, that the conductor has to perform some of his functions on the engineer's side of the cab, thereby distracting the engineer as he operates the locomotive. Defendant argues that such testimony is speculative, and says nothing about whether Bell was distracted before the collision. Defendant also contends that applicable regulations require only a single radio be available to the crew.

There is no evidence of radio transmissions to or from Bell's train shortly prior to the collision. The briefs reference no such transmissions, and the dispatcher has testified that he did not communicate by radio with Bell. Absent a showing that radio transmissions were occurring shortly before the collision, the evidence about a possible distraction during such transmissions is too speculative to be considered.

In any event, Conductor Ruetz is not qualified to testify about the extent to

---

1. The rulings with regard to inadmissibility under Rule 406 are without prejudice to the plaintiff's right to seek to develop the record further to show that inoperable defrosters and/or operation at track speed in fog and similar conditions were a routine aspect of the railroad's operations. To that end, I note that a foundation for Rule 406 evidence can be established by lay opinion under Fed. R.Evid. 701. *See* Wright & Graham, 23 Fed. Prac. & Proc. Evid. § 5276 (1980) (2003 Supp.). Such opinion must be rationally based on perception and helpful to a determination of a fact at issue. *Burlington Northern Ry. Co. v. Neb.,* 802 F.2d 994, 1004 (8th Cir.1986); *Greenwood Ranches, Inc. v. Skie Constr. Co.,* 629 F.2d 518, 522 (8th Cir.1980). Personal knowledge based on industry experience can provide the foundation lay opinion testimony. *See, e.g., Farner v. Paccar, Inc.,* 562 F.2d 518, 520 (8th Cir.1977).

which an engineer may or may not be distracted when a conductor uses the engineer's radio. Engineer Sharrock might be able to give such testimony, but any such testimony by him would be relevant only if there were evidence of radio transmissions to or from Bell's train shortly before the crash. Absent such evidence, Sharrock's statements about possible distraction are not relevant.

■ Finally, plaintiff seeks to offer evidence that crew members have experienced "false clear" or black signals in the past. Once again, the affiants' statements are conclusory, and give no indication of the location or frequency of such incidents. The statements do not indicate that such incidents occurred either in the area of the collision, or had been reasonably proximate in time to the collision. Without such a nexus to the location and time of the accident, these statements are not admissible. If admitted, this evidence would leave it to the jury, impermissibly, to speculate that Bell passed by either a "false clear" or black signal or signals before the collision.

In light of the foregoing, it is

ORDERED THAT defendant's motion to strike be, and the same hereby is granted in part and denied in part in accordance with the foregoing.

So ordered.