# IN THE COURT OF APPEALS OF IOWA

No. 19-1162
Filed September 23, 2020

**MATTHEW HOLMES,**
        Plaintiff-Appellant,

**vs.**

**MIRANDA POMEROY,**
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Warren County, Michael Jacobsen,

Judge.


        Matthew Holmes appeals the district court's refusal to grant a new trial in

this personal-injury case. **AFFIRMED.**


        Matthew M. Sahag of Dickey, Campbell & Sahag Law Firm, PLC, Des

Moines, for appellant.

        J. Scott Bardole of Andersen & Associates, West Des Moines, for appellee.


        Considered by Tabor, P.J., and May and Greer, JJ.

**MAY, Judge.**

A bicycle collided with an automobile. The biker (Matthew Holmes) sued the driver (Miranda Pomeroy) for personal-injury damages. A jury returned a defense verdict. Holmes appeals. We affirm.

## I. Background

On June 8, 2015, Pomeroy was driving westbound on Cumming Avenue in Cumming. Holmes was riding his bicycle southbound on a bike trail that intersects Cumming Avenue. Holmes turned left onto Cumming Avenue. Pomeroy's vehicle collided with Holmes and his bicycle. Holmes suffered injuries.

In June 2017, Holmes filed this negligence action against Pomeroy. Following a three-day trial, a jury found Pomeroy was not at fault.

Holmes moved for a new trial. The district court denied Holmes's motion.

On appeal, Holmes contends (1) the district court erred in limiting cross-examination and argument before the jury concerning hearsay statements; (2) the district court abused its discretion by admitting Holmes's admissions at the scene that the collision was his "fault"; (3) the district court abused its discretion by refusing to admit habit evidence under Iowa Rule of Evidence 5.406 to show Pomeroy was using her phone at the time of the collision; and (4) the district court erred by denying Holmes's motion for new trial on the basis of alleged misconduct during closing arguments.

## II. Standard of Review

We apply different standards of review to different issues. "Generally, we review a district court's evidentiary rulings for an abuse of discretion." *Wailes v.*

*Hy-Vee, Inc.*, 861 N.W.2d 262, 264 (Iowa Ct. App. 2014). But hearsay challenges are reviewed for errors at law. *State v. Musser*, 721 N.W.2d 734, 751 (Iowa 2006).

"Our standard of review of a denial of a motion for new trial depends upon the grounds for new trial asserted in the motion and ruled upon by the court." *Ladeburg v. Ray*, 508 N.W.2d 694, 696 (Iowa 1993). "If the motion and ruling are based on a discretionary ground, the trial court's decision is reviewed on appeal for an abuse of discretion." *Id.* And the district court has broad discretion in determining whether alleged misconduct by a party or their attorney justifies a new trial. *Mays v. C. Mac Chambers Co.*, 490 N.W.2d 800, 803 (Iowa 1992). But we can only review the denial of a new trial if a timely objection was raised. *Loehr v. Mettille*, 806 N.W.2d 270, 279 (Iowa 2011).

### III. Analysis

### A. Deputy Ohlinger's testimony

We begin with Holmes's contentions about Deputy Lisa Ohlinger, who responded to the collision and wrote a report about it. Pomeroy called Ohlinger as a witness. The following exchange occurred:

> Q. Now, do you recall in your report whether you investigated whether or not there was any—whether Ms. Pomeroy had been acting in any way that might have contributed to the accident at the time? A. I do recall when I was there that there was some mention maybe, like, a—
> Q. I'm sorry. Let me ask you this—
> [Holmes's counsel]: Judge, I think the witness can respond to the question.
> THE COURT: Let's let her finish the answer before you ask her another question.
> A. Somebody there had mentioned that somebody else maybe had thought she was texting. However, whoever told me that was not the person who witnessed it, nor did they know who allegedly witnessed that. That was complete hearsay, and I didn't have anybody to corroborate that, so that was left out.

After a few more questions, Pomeroy passed the witness. Holmes's attorney then asked Ohlinger whether someone told Ohlinger that someone thought Pomeroy had been using her cell phone while driving. Pomeroy objected on hearsay grounds. The court sustained the objection.

Fast forward to closing arguments. Holmes had prepared a PowerPoint slide that said "[a] witness said [Pomeroy] was texting while driving." Pomeroy objected. The court precluded Holmes from using the slide in closing arguments.

On appeal, Holmes claims these exchanges reveal two errors by the district court. Holmes first contends that, because Ohlinger testified without objection to a rumor about possible ("maybe") texting by Pomeroy, the court erred by preventing Holmes from eliciting additional hearsay testimony about the same subject. We disagree.

Holmes has cited no authority for the proposition that a district court must overrule otherwise-proper hearsay objections simply because some hearsay has been admitted without objection. *See, e.g.*, Iowa Rs. Evid. 5.103(d) (stating the district court "must" exclude "inadmissible evidence"), .802 (recognizing that generally "[h]earsay is not admissible"). Nor does Holmes point to an offer of proof or otherwise demonstrate what additional evidence Ohlinger would have provided if the objections had been overruled. *See* Iowa R. Evid. 5.103(a)(2).

Indeed, given Deputy Ohlinger's obvious distrust of the texting rumor—the Deputy called it uncorroborated "complete hearsay"—we doubt additional testimony would have added measurable strength to Holmes's case. So even if the district court erred, we do not find it is "probable a different result would have

been reached but for" the error. *Mohammed v. Otoadese*, 738 N.W.2d 628, 633 (Iowa 2007) (citation omitted). We decline to reverse on this ground.

Holmes also complains that, in light of the testimony Ohlinger was permitted to give, the district court was wrong to limit Holmes's closing argument. "[W]e review a district court's rulings on the scope of closing argument for the abuse of discretion." *Waterman v. Lanferman*, No. 04-2072, 2005 WL 2757238, at *3 (Iowa Ct. App. Oct. 26, 2005) (citing *Lane v. Coe Coll.*, 581 N.W.2d 214, 218 (Iowa Ct. App. 1998)). Holmes wanted to argue that a "witness said [Pomeroy] was texting while driving." But this did not match the admitted testimony. Ohlinger only recalled that "[s]omebody . . . had mentioned that *somebody* else *maybe* had *thought* she was texting." (Emphasis added.) The district court did not abuse its discretion by preventing misstatements of the evidence during closing argument.

## B. Holmes's admissions at the scene

Pomeroy also called Andrea J. Silvers, M.D., to testify. Dr. Silvers had been nearby when the collision occurred. When she saw someone was on the ground, Dr. Silvers ran over and helped Holmes. Dr. Silvers explained the encounter this way:

> So it was obvious very quickly that the person was awake. He was able to talk. Thankfully, he had his helmet on. That was a blessing.
> Quickly we realized that was all intact. The next question you always ask is: does your neck hurt, if you have been in any kind of accident. Of course, there is the cervical spine and a fracture risk.
> I recollect that there was some—Yes, my neck hurt some. So then you don't move the person at all. You just keep them immobilized until the ambulance can come with a collar to protect the neck until cleared.
> We were there after a few other bystanders were there. I just kind of knelt down on the concrete, talking to the person. The face was very bloody; awake, alert, answering questions, very thankful; did not have any signs of concussion; didn't seem confused; was

able to answer questions; speech was normal. So kind of my job was to keep him from moving his neck at that point while we waited for the emergency services.

When asked whether Holmes said "anything about the accident," Dr. Silvers said "yes." This exchange followed:

> Q. What did he say? A. This is—he either said, "It was my fault," or "This was my fault."
> [Holmes's counsel]: I am going to object. I ask my objection precede the answer. The response is a legal conclusion.
> THE COURT: Overruled.
> Q. (By [Pomeroy's counsel]) Do you recognize Mr. Holmes here? A. Honesty, I don't. He had his helmet on. His face was covered in blood. The neighbor brought some towels. I did a little bit of dabbing to see if there was a lot of facial trauma. There was a lot of blood around. So no, because there was too much blood on the face.
> Q. But the person did say, "It was my fault," or—what did he say? A. Yes.
> Q. What were the two phrases you used? A. It was either "This was my fault," or "It was my fault."

Pomeroy then passed the witness. During cross-examination, this exchange occurred between Holmes's attorney and Dr. Silvers:

> Q. And, as I understand your testimony, you can't—you don't recall exactly what he said? A. It has been three years. But the words "my fault" are one hundred percent. I just don't know if he said, "It is my fault," or "this is my fault." That I cannot say. It is one of those two.

On appeal, Holmes claims the district court should not have permitted Dr. Silvers to testify about Holmes's admission that the accident was "my fault." Holmes claims it was "inadmissible as a legal conclusion." As support, he cites *Beyer v. Todd*, 601 N.W.2d 35 (Iowa 1999).

We disagree. Holmes's admissions are presumptively admissible when offered by Pomeroy, a party opponent. *See, e.g.*, Iowa R. Evid. 5.801(d)(2). And, like Pomeroy, we believe *Beyer* should be distinguished because it concerned the

admissibility of legal theories in pleadings, not oral admissions that an accident was "my fault."  601 N.W.2d at 41–42 (explaining "that only admissions of factual matters made in pleadings, and not merely allegations or statements of legal theories, are admissible as evidence").

We also reject Holmes's argument that his oral confessions of fault—which Holmes made while receiving emergency care immediately after the accident— should have been excluded as legal opinions.  *See* 2 McCormick on Evidence § 256 (8th ed. Apr. 2020 update).  In general, a speaker's admission "that the mishap was the speaker's fault" is treated merely as a revelation of "the facts as the declarant thinks them to be."  *Id.*  "[T]he factual information conveyed" is not inadmissible "merely because the statement may also indicate the party's assumptions about the law."  *Id.* (footnote omitted).  And, indeed, Holmes admits he "didn't know the law" and "was not equipped to opine" about it at the time of the accident.  So we see his comments about "fault" as a factual appraisal, not a legal opinion.  The district court did not abuse its discretion by admitting Holmes's admissions.

### C. Habit evidence

Holmes also argues the district court abused its discretion by limiting the purposes for which the jury could use evidence that, on certain occasions after the accident, Pomeroy used her cell phone while driving.  While much of this evidence—text messages and photos—was admitted for impeachment purposes, Holmes contends the court should also have admitted it as proof that Pomeroy

was using her phone when the accident occurred.[1]  Holmes relies on Iowa Rule of

Evidence 5.406, our habit-evidence rule, which states:

> Evidence of a person's habit or an organization's routine practice
> may be admitted to prove that on a particular occasion the person or
> organization acted in accordance with the habit or routine practice.
> The court may admit this evidence regardless of whether it is
> corroborated or whether there was an eyewitness.

Pomeroy argues the district court was right for two reasons.  First, Pomeroy

suggests the district court was merely following the law's clear edict that habit may

be proven only through incidents that occurred *prior* to the accident, not *after* the

accident.  We are not as sure.  Like its federal counterpart, rule 5.406 "is silent on

how habit . . . can be proved."  *See* Thomas A. Mauet & Warren D. Wolfson, Trial

Evidence § 5.3 (7th ed. 2020) [hereinafter Trial Evidence] (discussing the federal

counterpart to rule 5.406).

But we need not decide the issue.  Even when we consider the post-

accident examples, Holmes's evidence was not sufficient to show a habit for

purposes of rule 5.406.

As suggested, "[a] habit is a person's regular practice of responding to a

particular kind of situation with a specific kind of conduct."  *Gamerdinger v.

Schaefer*, 603 N.W.2d 590, 594 (Iowa 1999).  It is "how someone regularly, almost

---

[1] The court instructed the jury as follows:
> You have heard evidence and shown exhibits that Defendant
> Miranda Pomeroy has taken photographs, used Snapchat, Twitter,
> Facebook, Instagram and Text Messaging while driving a motor
> vehicle or stopped on the traveled portion of a roadway.  You may
> only use such evidence to determine if Miranda Pomeroy made
> inconsistent statements about such acts.  You may not consider said
> acts as proving that Defendant was distracted by such acts at the
> time of the accident on June 8, 2015.

automatically, responds to a specific recurring situation." Trial Evidence § 5.3. It is "reflexive, situation-specific repetitive behavior." *Id.* And so habit evidence can be a powerful indicator of how a person likely behaved on a particular occasion, such as when an accident occurred.

But habit evidence also carries risks. "[I]t necessarily engenders the very real possibility that such evidence will be used to establish a party's propensity to act in conformity with its general character, thereby thwarting Rule [5.404's] prohibition against the use of character evidence except for narrowly prescribed purposes." *Simplex, Inc. v. Diversified Energy Sys., Inc.*, 847 F.2d 1290, 1293 (7th Cir. 1988) (discussing Federal Rule of Evidence 404). "Moreover, such collateral inquiries threaten the orderly conduct of trial while potentially coloring the central inquiry and unfairly prejudicing the party against whom they are directed." *Id.* "Thus, before a court may admit evidence of habit, the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." *Id.*

And so we agree with Pomeroy that, "in order for evidence of [Pomeroy's] habit of driving while distracted to be admissible in this case," Holmes was required to present proof that Pomeroy "always or in most instances[] use[s] her phone" while driving a moving vehicle. Holmes did not meet this standard. Holmes's brief points to "twenty (20) examples" in which Pomeroy used a phone in a car over an almost-three-year period spanning from May 2015 to February 2018. And in several of Holmes's examples, it is not clear whether Pomeroy was driving or—if so—whether the car was moving. Even assuming she was driving a moving

vehicle in all of Holmes's examples, though, those examples still would not be "numerous enough" to show Pomeroy has a *habit* of using her phone every time— or even most times—she drives a moving car. *See Barrick v. Smith*, 80 N.W.2d 326, 329 (Iowa 1957) (noting the instances must be "numerous enough to base an inference of systematic conduct," not just "casual recurrences" (citation omitted)). So rule 5.406 did not support admission of Holmes's evidence to show Pomeroy was using her phone when her moving vehicle collided with Holmes. The district court did not abuse its discretion.

### D. Motion for new trial

Finally, Holmes claims the district court erred in failing to grant a new trial based on alleged misconduct by Pomeroy's counsel during closing arguments. In response, Pomeroy notes Holmes "failed to object to the statement at the time" it "was made or at any other time before the case was submitted to the jury." According to Pomeroy, "[t]he first time" Holmes "raised his objection to the statement was in his motion for new trial." In Pomeroy's view, this was too late to preserve error.

Holmes does not contend he raised an objection prior to his motion for new trial. Still, Holmes maintains, this was sufficient to preserve error.

Interestingly, both Holmes and Pomeroy rely on the same case, *Loehr v. Mettille.* 806 N.W.2d 270, 271 (Iowa 2011). In *Loehr*, our supreme court clarified the rules governing error preservation and motions for new trial. *See id.* at 277– 79. Four relevant points stand out.

First, *Loehr* reaffirmed the general rule that counsel "cannot sit idly by" and watch the trial judge submit the case to the jury "and then, after an unfavorable

verdict, take advantage of an error which [counsel] could and should but did not call to the court's attention." *Id.* at 277 (quoting *Schmitt v. Jenkins Truck Lines, Inc.*, 170 N.W.2d 632, 660 (Iowa 1969)). This follows the general principle "that parties are not permitted to delay objections until it is too late for the problem to be corrected." *Id.* at 279 (quoting *Rudolph v. Iowa Methodist Med. Ctr.*, 293 N.W.2d 550, 555 (Iowa 1980)).

Second, *even if* counsel fails to timely object, *the district court* still has *power* to grant a new trial if a ground set forth in Iowa Rule of Civil Procedure 1.1004 has been met. *Id.* at 278. Put another way, a party's tardiness does not strip the district court of *its authority* to grant a new trial when justice requires. *Id.* at 279.

Third, because the district court has authority to grant a new trial even without a timely objection, appellate courts should not *automatically* reverse the *grant* of a new trial solely because no timely objection was made. "[I]t is not invariably an abuse of discretion for a trial judge to *grant* a motion for new trial based on a matter that could have been raised earlier, but was not." *Id.* at 278 (emphasis added).

Fourth, a different rule applies to appeals from the *denial* of a motion for a new trial. Although the absence of a timely objection does not strip the district court of its *authority* to order a new trial, a complaining party "loses its *right* to a new trial if it neglects timely error preservation." *Id.* Therefore, "failure to make a contemporaneous objection will preclude a party from raising the matter on appeal if the motion for new trial is *denied.*" *Id.* at 279.

In this case, Holmes appeals the *denial* of his request for a new trial. So before we can reach the merits, we must conclude Holmes made a timely

objection. *Id.* Holmes contends he did so by filing a motion for new trial following the verdict. We disagree. "[I]t is not timely to await the result of the trial and then first complain" about misconduct in closing arguments through allegations in a "motion for new trial." *Andrews v. Struble*, 178 N.W.2d 391, 401 (Iowa 1970). Instead, "[w]hen an improper remark is made by counsel in the course of jury argument, it is the duty of the party aggrieved to timely voice objection." *Andreesen v. Chi., Cent. & Pac. R.R. Co.*, No. 19-0057, 2020 WL 567328, at *5 (Iowa Ct. App. Feb. 5, 2020) (citation omitted). "Alternatively, a complaining party can object in a motion for mistrial made before submission of the matter to the jury." *Id.* Because "[n]either was done here," we conclude "error was not preserved." *Id.*; *accord Kinseth v. Weil-McLain*, 913 N.W.2d 55, 67 (Iowa 2018) ("Timely objections give 'the trial court an opportunity to admonish counsel or instruct the jury as it may see fit.' Indeed, we require prompt objection to discourage the wait-and-see approach, in which aggrieved parties refrain from objecting to remarks in a jury argument until after the verdict has been rendered." (citation omitted)).

Holmes has shown no grounds for reversal. We affirm.

**AFFIRMED.**